UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **HYBROCO SALES, INC.,** | 21-cv-10595-TGB-APP |
| Plaintiff, | **ORDER** |
| v. | **GRANTING PLAINTIFF'S PETITION TO COMPEL ARBITRATION (ECF NO. 3)** |
| **WILLIAM C HEYNE III, et al.,** | |
| Defendants. | **DENYING DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TRANSFER TO THE MIDDLE DISTRICT OF TENNESSEE (ECF NO. 9)** |

This action concerns the alleged violations of contractual non-compete provisions by Defendants William C. Heyne III and William Adkisson, who were both formerly employed as salesmen for Plaintiff Hybroco Sales, Inc. ECF No. 1. Presently before the Court are Plaintiff's Motion to Compel Arbitration, ECF No. 3, and Defendants' Motion to Dismiss or Transfer Plaintiff's Petition to Compel. ECF No. 9. Plaintiff alleges that Defendants have violated provisions in their Employment Agreements that prohibit them from competing in their former territories and using or disclosing confidential information obtained during the course of their employment with Plaintiff for a period of nine months following their termination.

1

These matters are fully briefed, and upon review of the parties submissions, the Court concludes that oral argument will not help in the disposition of these matters. The Court will therefore resolve the motions on the briefs. *See* E.D. Mich. L.R. § 7.1(f)(2).

For the reasons that follow, the Court will **GRANT** Plaintiff's Motion to Compel Arbitration and **DENY** Defendants' Motion to Dismiss or Transfer.

## I.   Background

Defendants William Heyne III and William Phillip Adkisson are former salesmen for Plaintiff Hybroco Sales, Inc, which is in the business of selling industrial fastener products. ECF No. 9, PageID.54; ECF No. 11, PageID.196. Plaintiff has its headquarters in Michigan but maintains an office in Nashville, Tennessee. ECF No. 9, PageID.57. Defendant Adkisson had worked for Plaintiff since October 2005. Defendant Heyne since March 2013. Both worked out of the Nashville office.

The conditions of Defendants' employment were outlined in their respective Employment Agreements, which they both signed. The terms included various post-employment restrictions. ECF Nos. 11-2, 11-3. Paragraph 9.1, for instance, requires that for a period of nine months following termination, Defendants are prohibited "from selling or soliciting orders for any similar products to any person or entity located within the territory Defendants serviced for the prior five years." ECF

2

No. 11, PageID.196-97. Paragraph 9.2, which acts as a confidentiality agreement, prohibits Defendants from "the use or disclosure of any information related to Defendants' products, services, pricing policies, customer lists, vendor, lists, business policies, or any other aspect of its business." *Id*. at PageID.197.

In addition, Paragraph 15.1, which functions as a mandatory arbitration clause, requires that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach thereof" be settled by arbitration in Detroit, Michigan. *Id*. The arbitration process is further subject to the prevailing Rules of the American Arbitration Association. *Id*.

Paragraph 2.2 states that either party "upon two weeks written notice to the other may terminate" the Employment Agreement. ECF No. 9, PageID.59. Neither of the Employment Agreements, however, contain a "survival clause," defining specific provisions that are intended to survive the contract after it is terminated.

Defendants' employment with Plaintiff came to an end. According to the record, Plaintiff terminated Heyne's employment on November 30, 2019, and Adkisson resigned on May 29, 2020. *Id*. Even though Defendant Adkisson stated that he would continue to work for the two-week notice period, Plaintiff immediately accepted his termination.

Following the Defendants' termination, Plaintiff alleges that it learned they were in violation of the non-compete and confidentiality provisions of their agreements. *Id*. Specifically, Plaintiff learned that Defendants were selling competitive products in the same territories serviced by Defendants while they were working for Plaintiff. Consequently, Plaintiff sent demand letters to each Defendant on December 21, 2020. ECF No. 9, PageID.59. These identical letters notified each Defendant that Plaintiff believed that they were in violation of Paragraphs 9.1 and 9.2 of their Employment Agreements. *Id*.

As a result of these alleged violations, on February 23, 2021, Plaintiff filed a demand for arbitration with AAA in Detroit. *Id*. at PageID.198. Plaintiff seeks $532,045.00 from Defendant Heyne and $418,870.00 from Defendant Adkisson. Plaintiff alleges that sometime in early March 2021, Defendants' counsel communicated to Plaintiff's counsel that his clients objected to arbitration on the basis that the arbitration clause did not survive termination of the Employment Agreement. *Id*.

On March 16, 2021 Plaintiff responded by filing a "petition, motion, and brief to compel arbitration" with this Court. *See* ECF No. 1, 3. Seven hours later, Defendants filed an action in the United States District Court for the Middle District of Tennessee. In that action, Defendants are seeking a declaratory judgment opposing the arbitrability of the claims.

Defendants also claim in the Tennessee lawsuit that Plaintiff underpaid Defendants' commissions under the contracts.  ECF No. 11, PageID.198. Defendants seek to dismiss this matter or in the alternative that it be transferred to the Middle District of Tennessee. ECF No. 9. Plaintiff meanwhile has filed a motion to transfer the Tennessee case to the Eastern District of Michigan. Plaintiff seeks to have this Court compel all issues be arbitrated as required under the Employment Agreements.

For the reasons set out below, Plaintiff's petition and motion to compel arbitration, ECF Nos. 1 and 3 will be granted, and Defendants motion to dismiss this case for lack of jurisdiction, or in the alternative, to transfer to the Middle District of Tennessee, ECF No. 9, will be denied.

## II.   Legal Standard

Courts in the Sixth Circuit are split on whether a motion to dismiss based on an arbitration agreement should be brought under Federal Rule of Civil Procedure12(b)(1) (lack of subject matter jurisdiction) or Rule 12(b)(6) (failure to state a claim). Some courts have found that such motions should be raised under Rule 12(b)(1). Others have concluded that they arise under Rule 12(b)(6).

Whether to proceed under one rule or the other turns on concerns about, on one hand, whether evidence outside the pleadings is being used and whether the case should be dismissed with prejudice under Rule 12(b)(6), and, on the other, whether the term "jurisdiction" (as in "lack of

subject matter jurisdiction") is being used with precision under Rule 12(b)(1). When analyzing a factual attack to subject matter jurisdiction under Rule 12(b)(1), a court may consider any evidence properly before it. *See Morrison v. Circuit City Stores, Inc.*, 70 F. Supp. 2d 815, 819 (S.D. Ohio 1999). The typical result of a Rule 12(b)(1) dismissal is that no obstacle prevents a plaintiff from litigating her claims in a different forum. *See Dalton v. Jefferson Smurfit Corp.*, 979 F. Supp. 1187, 1192 (S.D. Ohio 1997) ("a motion to dismiss premised upon the argument that a plaintiff's claim must be submitted to arbitration is properly analyzed under Rule 12(b)(1)"). A court dismissing a case because of an arbitration agreement "does not prevent a plaintiff from litigating the merits of his or her claim…[but] merely transfer the forum in which the litigation on the merits will occur." *Id*. These aspects of how Rule 12(b)(1) functions in the arbitration context suggest that a motion to dismiss based on an arbitration agreement falls within the Rule 12(b)(1) rather than with Rule 12(b)(6).

But under the Federal Arbitration Act, a court retains authority to stay a case pending arbitration and then afterward enter judgment on the award. *See* 9 U.S.C. §§ 3, 9. Thus, technically, when a court compels arbitration it still retains jurisdiction over the dispute. And the Sixth Circuit has cautioned courts to be more precise when analyzing challenges phrased as attacks on "jurisdiction." *See Primax Recoveries,*

*Inc. v. Gunter*, 433 F.3d 515, 518-19 (6th Cir. 2006). This aspect of how Rule 12(b)(1) functions in the arbitration context—dismissing a case for "lack of subject matter jurisdiction" when the court in fact has and retains jurisdiction—suggests that a motion to dismiss based on an arbitration agreement falls within Rule 12(b)(6) rather than within Rule 12(b)(1).

Here, Defendants bring their motion under Rule 12(b)(1). *See* ECF No. 9, PageID.56 (styling their motion to dismiss under Rule 12(b) but arguing that there is no basis for this Court to exercise jurisdiction). Plaintiff, for its part, does not argue that the Court should analyze the motion under Rule 12(b)(6). Instead, Plaintiff responds within the confines of Rule 12(b)(1). Yet Plaintiff cites Section 4 of the Federal Arbitration Act, which states that "only a district court in that forum has jurisdiction to compel arbitration." ECF No. 11, PageID.203. This suggests that Plaintiff's position is that this Court has some limited jurisdiction under Section 4 to compel the parties to arbitration. In any event, because the choice of Rules does not affect the outcome of the Court's analysis, and because the parties address the questions similarly, the Court will treat the motion as one to dismiss under Rule 12(b)(1).

A Rule 12(b)(1) motion attacks a complaint either facially or factually. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the sufficiency of the complaint itself, which requires a court to take as true all material allegations in the complaint

and to construe those allegations in the light most favorable to the plaintiff. *Id*. at 598. A factual attack, however, challenges the factual existence of subject matter jurisdiction. A court analyzing a factual attack therefore need not accept as true the complaint's factual allegations, but instead must weigh any evidence properly before it. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 918 (6th Cir. 1986).

Defendants argue that this Court is not the appropriate forum to decide the question of arbitrability. ECF No. 9, PageID.56. That is because Plaintiff has not established jurisdiction in this Court and also because Plaintiff lacks standing to bring this action. *Id*. Defendants also raise in the alternative that the Court transfer the Petition "to be consolidated before the Middle District of Tennessee for further proceedings." *Id*. at PageID.56-57. Accordingly, Defendants Rule 12(b) motion is a factual attack on Plaintiff's Complaint.

## III.   Discussion

Defendants raise three arguments as to why this Court should avoid enforcing the mandatory arbitration provision under their respective Employment Agreements. First, Defendants argue that Plaintiff's Petition to Compel Arbitration, ECF No. 1, "should be dismissed because it does not plead, and Plaintiff cannot establish, a basis for this Court to exercise jurisdiction." ECF No. 9, PageID.56.

Second, "Plaintiff lacks standing to seek the relief sought." *Id*. Finally, Defendants raise in the alternative that the Court "transfer the Petition to be consolidated before the Middle District of Tennessee for further proceedings." *Id*. at PageID.56-57.

"A written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (quoting 9 U.S.C. § 2). The Federal Arbitration Act "is at bottom a policy guaranteeing the enforcement of private contractual agreements" arising from a "liberal federal policy favoring arbitration agreements." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)). Accordingly, "when asked by a party to compel arbitration under a contract, a federal court must determine whether the parties have agreed to arbitrate the dispute at issue." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). When making this determination, there are two important considerations: the language in the arbitration agreement and the claims of the lawsuit.

Here, the language in the arbitration agreement and the claim of the lawsuit—allegations related to violations of the non-compete

provision found in Defendants' employment agreements—weigh in favor of enforcing the mandatory arbitration provision.

As a threshold matter, Defendants challenge Plaintiff's case on the basis of lack of standing. ECF No. 9, PageID.62-63. Specifically, Defendants argue that at the time of the filing of the Petition, "[Plaintiff] had suffered no injury." *Id*. Furthermore, Plaintiff filed its Petition "based on speculation in a discussion with Defendants' counsel that Defendants may object to the arbitrability of the dispute." *Id*.

An injury-in-fact for purposes of standing may be established upon a showing of "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Here, the record suggests that Defendants communicated that it would be challenging the arbitrability of the non-compete and confidentiality provisions in early March 2021. ECF No. 11, PageID.198. Defendants' communication of an intent to repudiate coupled with the impending deadline for them to answer the Demand for Arbitration— March 19, 2021—suggests that by March 16, 2021, Plaintiff had a reasonable belief that it would incur an *imminent* and concrete injury-in-

fact in the form of Defendants' repudiation of the Demand for Arbitration. Accordingly, Plaintiff has established that it has standing.[1]

Defendants next argue that the mandatory arbitration provision is no longer enforceable because the Employment Agreements do not feature a survival clause, and the parties "did not agree to the survival of any provision of either agreement beyond the respective agreement's termination date." ECF No. 9, PageID.58-59. In other words, because Defendants are no longer employees subject to the Employment Agreement, disputes in connection with violations of the non-compete and confidentiality provisions do not fall within the scope of the mandatory arbitration provision.

Plaintiff responds that arbitrability "is a question the parties delegated to the arbitrator." ECF No. 11, PageID.201. Plaintiff adds that this Court, rather than the Middle District of Tennessee, has the exclusive authority to compel the process of arbitration because the parties have agreed to arbitrate in a forum in this district. *Id*. at PageID.203; ECF No. 11-2, PageID.211 ("*Any* controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in Detroit, Michigan."). Moreover, the language of

---

[1] The elements for standing also consider (a) causal connection between the injury and the conduct complained of, and (b) that it must be likely that the injury will be redressed by a favorable decision. The parties, however, only dispute the element of injury-in-fact.

the non-compete provision "contemplate continuing obligations post-termination." *Id*. at PageID.202. That is because even though the Employment Agreements do not feature a survival clause, certain provisions "prohibit Defendants from competing for nine months and require Defendants to keep information confidential." *Id*.

In analyzing the questions presented, the Court finds that the appropriate course of action is to compel the process of arbitration in accordance with Section 15.1 of the Employment Agreements. Specifically, the question of arbitrability must be decided by an arbitrator. The Sixth Circuit in *Blanton v. Domino's Pizza Franchising* ruled that "the incorporation of the AAA Rules provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" 962 F.3d 842, 846 (6th Cir. 2020). Here, Section 15.1 clearly and unmistakably requires that issues falling within the scope of arbitration are to be resolved "in accordance with the then prevailing Rules of the American Arbitration Association." *See* ECF No. 11-2, PageID.211; ECF No. 11-3, PageID.216.

As to the issue of whether violations of Sections 9.1 and 9.2 are within the scope of Section 15.1's mandatory arbitration clause even during the post-termination period and where there is no survival clause, the Supreme Court has expressed a presumption in favor of arbitration under three circumstances. *Litton Fin. Printing Div., a Div. of Litton Bus.*

*Sys., Inc. v. NLRB*, 501 U.S. 190, 205-06 (1991). The presumption in favor of post-expiration arbitration applies where the dispute has its real source in the contract. These occur when (1) it involves facts and occurrences that arose before expiration; (2) an action taken after expiration infringes a right that accrued or vested under the agreement; or (3) under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement. *Id.*

Here, under principles of contract interpretation, the right to mandatory arbitration survives the post-termination period for a period of nine months. That is because the plain meaning of Sections 9.1 and 9.2 contemplate that the restrictive covenant goes into effect only after the termination of the employment relationship. That the parties agreed to a non-compete period of nine months—after the employment relationship ends—suggests that the parties had an implicit intent that the restrictive covenant survive for nine months even without an explicit survival clause. Otherwise, this provision would be rendered meaningless. Defendants have also failed to offer any other convincing argument that the parties did not intend for Section 9 to survive termination.

Thus, because the claims raised are within the language "[a]ny controversy or claim arising out of or relating to this Agreement" and the

parties incorporated the AAA Rules, circuit precedent compels this Court to grant Plaintiff's Motion to Compel Arbitration

## CONCLUSION

The claims here are subject to the mandatory arbitration clause found within each Defendants' Employment Agreement. As such, Plaintiff's Petition to Compel Arbitration is **GRANTED** and Defendants' Motion to Dismiss, or in the alternative, to Transfer to the Middle District of Tennessee is **DENIED**. Furthermore, this action will be **STAYED** pending the conclusion of the arbitration process and closed for administrative purposes. Either party may seek to lift the stay and re-open the case if necessary to enforce the decision of the arbitrator.

**IT IS SO ORDERED.**

Dated: August 26, 2021      s/Terrence G. Berg
                                  TERRENCE G. BERG
                                  UNITED STATES DISTRICT JUDGE